813 So.2d 61 (2002)
STATE of Florida, Petitioner,
v.
Norris WILLIAMSON, Respondent.
No. SC95721.
Supreme Court of Florida.
February 28, 2002.
*62 Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, and Ann Pfeiffer Howe, Assistant Attorney General, Tampa, FL, for Petitioner.
James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Respondent.
QUINCE, J.
We have for review a decision ruling upon the following three questions certified by the Second District Court of Appeal to be of great public importance:
DOES CHICONE V. STATE, 684 So.2d 736 (Fla.1996), RECEDE FROM STATE V. MEDLIN, 273 So.2d 394 (1973)(INDICATING THAT THE STATE MUST PROVE GUILTY KNOWLEDGE IN CONSTRUCTIVE POSSESSION BUT NOT ACTUAL POSSESSION CASES)?
DOES CHICONE APPLY WHEN THE DEFENSE PRESENTS NO EVIDENCE?
DOES CHICONE CREATE A NEW ELEMENT TO THE CRIME OF POSSESSION OF A CONTROLLED SUBSTANCE?
See Williamson v. State, 764 So.2d 22 (Fla. 2d DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Our recent decision in Scott v. State, 808 So.2d 166 (Fla.2002), controls the result in this case. For the reasons outlined below and in the Scott opinion, we answer questions one and three in the negative and question two in the affirmative.

STATEMENT OF THE CASE AND FACTS
On May 12, 1997, respondent, Norris Williamson, was charged in the Thirteenth Judicial Circuit with one count each of burglary of a dwelling, possession of a controlled substance, and petit theft. The remaining facts have been summarized by the Second District Court of Appeal as follows:

*63 At trial, Shirline Smith testified that she owned a house which she had rented to Henry Klamm and Bruce Dill. The House had caught fire about five days prior to the incident and was boarded up. Klamm and Dill no longer lived there, and they did not testify at trial. Smith testified that a small refrigerator in Klamm's room belonged to her. On April 25, 1997, the police called Smith to the house. A small refrigerator was in the backyard, and the back door had been broken open. Smith testified that she did not give Williamson permission to go into the house and take anything from it.
Hector Noyas, a fire inspector, testified that he met Smith during his investigation of a series of arsons in the area. While on patrol, he saw Williamson walking away from the back of Smith's house, carrying a small refrigerator. Noyas stopped Williamson and asked him if he lived there. Williamson said that he did "sometimes." Noyas knew from his previous conversations with Smith that Williamson did not live at the house. Noyas called the Tampa Police Department. Two officers arrived and a search of Williamson revealed two knives, five rings, and some pills, which contained codeine. Williamson told the officers he went inside the house and found the rings on the floor. He also testified that he found the pills next to the refrigerator.
A crime lab analyst testified that the pills that Williamson had taken were marked "Tylenol." The word codeine was below the word Tylenol but could not be read without a microscope. After these facts were presented, the State rested and the defense moved for a judgment of acquittal on the burglary charge. The motion was denied. The defense presented no evidence, but, in closing, counsel for Williamson argued that his client had no idea what was in the pill bottle that he had taken. The defense then requested a special jury instruction based on Chicone v. State, 684 So.2d 736 (Fla.1996). The requested instruction would have required the jury to find that Williamson had to have known the illicit nature of the substance in order to be guilty of possession. The trial court refused to give this instruction. Williamson was found guilty on all counts.
Williamson appealed the trial court's judgment and sentence for burglary and possession of a controlled substance. On the issue of burglary, the Second District found that the trial court should have granted his motion for judgment of acquittal on the burglary charge. The court found that since the State had not conclusively proved that Williamson did not have permission to enter Smith's house, acquittal would have been appropriate. On the issue of possession of a controlled substance, the Second District found that although Williamson admitted to finding the pills inside Smith's house and taking them, he did not admit to knowing what those pills contained. In light of the fact that the crime lab analyst testified to being able to read the word "codeine" only with the help of a microscope, the State presented no evidence that Williamson knew what the pills actually contained. The court found that since Williamson's counsel used the defense that his client did not know about the pills' content, the failure to instruct on this issue was not harmless. See Williamson v. State, 764 So.2d 22, 24 (Fla. 2d DCA 1999). The State filed for discretionary review in this Court.
We recently analyzed similar issues in Scott v. State, 808 So.2d 166 (Fla.2002). In deciding Scott, we relied heavily upon our decision in Chicone v. State, which we detailed in Scott. We now apply the same reasoning to Williamson's case.

*64 ANALYSIS

Williamson was convicted of violating section 893.13(6)(a), Florida Statutes (1995), which provides:
It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter.
During Williamson's trial, the judge instructed the jury as follows on the issue of possession:
To possess means to have personal charge of or exercise the right of ownership, management, or control over the thing possessed. Possession may be actual or constructive. If a thing is in the hand of or on the person or in a bag or container in the hand of or on the person or is so close as to be within ready reach and is under the control of the person it is in the actual possession of that person.

If a thing is in a place over which the person has control or in which person has hidden or concealed it, it is in the constructive possession of that person. If a person has exclusive possession of a thing knowledge of its presence may be inferred or assumed. If a person does not have exclusive possession of a thing knowledge of its presence may not be inferred or assumed.
(Emphasis added.)
The State offered proof that Williamson was in actual possession of the pill bottle and the pills it contained. Although the State proved Williamson had taken the pill bottle and was in possession of it when he was arrested, it failed to present any evidence that Williamson actually knew that the pills contained a controlled substance; in other words, the State failed to demonstrate Williamson knew the illicit nature of the pills.
The State relies on State v. Medlin, 273 So.2d 394 (Fla.1973), to support its argument that a defendant's actual possession gives rise to the inference that the defendant had knowledge of the presence of the illegal substance. Respondent counters that knowledge of the presence does not necessarily mean knowledge of the illicit nature of that substance in either an actual or constructive possession case. In Chicone, this Court plainly stated: "Medlin stands for the proposition that evidence of actual, personal possession is enough to sustain a conviction. In other words, knowledge can be inferred from the fact of personal possession." Chicone, 684 So.2d at 739. In fact, the court in Medlin specifically stated: "Proof that defendant committed the prohibited act raised the presumption that the act was knowingly and intentionally done." Medlin, 273 So.2d at 397.
While a conviction may be sustained in a personal possession case based on the Medlin presumption, the presumption may not be sufficient when there is other evidence which tends to negate the presumption. In this case, the State's own evidence, through the testimony of the crime lab analyst, demonstrated that Williamson may not have been aware of the ingredients in the pills he had taken since the word "codeine" could only be read with the help of a microscope. At Williamson's trial, the analyst testified that the pills were in a pill bottle when she received it. Her testimony showed that she could not read the word codeine on the pills without the help of a microscope. The district *65 court found this evidence supported Williamson's defense that he had no knowledge of the illicit nature of the pills.
Based on the foregoing, we approve the decision of the Second District finding the trial court should have given the Chicone jury instruction as requested and finding, based on Williamson's defense of lack of knowledge of the illicit nature of the pills, that the error was not harmless.
In the Chicone opinion we did not recede from Medlin, finding it still applicable to both actual and exclusive constructive possession cases. However, as stated herein, the State proceeds at its own peril in relying on the presumption when there is evidence which tends to negate the presumption. Therefore, the first certified question should be answered in the negative. We answer the second certified question in the affirmative. As we stated in Chicone, guilty knowledge, including knowledge of the illicit nature of the drug possessed, is an element of the crimes of possession of a controlled substance and possession of drug paraphernalia. Because it is an element of the crime, the defendant is entitled to an instruction whether the defense presents evidence or not. Finally, we answer the third question in the negative because the element of knowledge of the illicit nature of a substance has always been an implicit component of the knowledge element of possession of an illegal substance as our reasoning in Chicone demonstrates.
We hereby approve the decision of the Second District which remanded this case for a new trial on the charge of possession of a controlled substance.
It is so ordered.
SHAW, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
HARDING, J., concurring with an opinion.
WELLS, C.J., dissents.
HARDING, J., concurring.
I concur. I write to explain why the Chicone issue was preserved for review in this case. The record here reflects that the defense attorney did not submit in writing a requested jury instruction based on Chicone. However, at the time of trial in this case (November 1997), the Chicone instruction was already a part of the standard jury instructions. See Standard Jury Instructions in Criminal Cases (97-1), 697 So.2d 84, 87 (Fla.1997) (adopting Chicone instruction, effective July 10, 1997). The requirement of written jury instructions is inapplicable when a Florida standard jury instruction is requested on the record. See Holley v. State, 423 So.2d 562, 564 (Fla. 1st DCA 1982). Therefore, I find that the issue was preserved for appellate review. Nevertheless, I echo the concerns that I expressed in my dissenting opinion in Scott v. State, 808 So.2d at 173 regarding the applicability of the Chicone instruction and the Medlin presumption to cases of actual or constructive possession.